# Exhibit 1

NOTICE OF SUIT TO SHERIFF OF ALLEGHENY CO.
You are hereby notified that on __8/14/2012__
a COMPLAINT has been filed in this case
and you are required to serve the same on or before the
__9/13/2012__
Kate Barkman, Director
Department of Court Records

*Served*
*8/27/2012*

## COMPLAINT IN CIVIL ACTION

## IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| Plaintiff(s)<br>Clarey, Joan | Case Number :<br><br>GD ⊢ 12 ⊢ 014512 |
|---|---|
| | Type of pleading:<br>**COMPLAINT** |
| | Filed on behalf of:<br>**Joan Clarey**<br><br>**Stanley M Stein**<br>(Name of the filing party) |
| Vs | |
| Defendant(s)<br>**First National Bank of PA** | [ X ] Counsel of Record<br><br>[ ] Individual, If Pro Se |
| | Name, Address and Telephone Number :<br>**Stanley M Stein**<br>**445 Fort Pitt Boulevard**<br>**Suite 150**<br>**Pittsburgh , PA 15219**<br>**412 263-6111** |
| | Attorney's State ID: 10577 |



**Kate Barkman, Director, Department of Court Records**

IN THE COURT OF COMMON PLEAS FOR ALLEGHENY COUNTY, PENNSYLVANIA

| | |
|---|---|
| JOAN CLAREY, individually and on behalf of all persons similarly situated,<br><br>                   Plaintiff,<br><br>  -against-<br><br>FIRST NATIONAL BANK OF PENNSYLVANIA,<br><br>                Defendant. | Civil Action No.: GD - 12 - 014512<br><br>**CLASS ACTION**<br><br>**CLASS ACTION COMPLAINT**<br><br><br><br>**JURY TRIAL DEMANDED**<br><br>Filed on Behalf of Plaintiff :<br>JOAN CLAREY, individually and on behalf of all persons similarly situated |

**NOTICE TO PLEAD**

You are hereby notified to file a written response to the enclosed COMPLAINT IN CIVIL ACTION within twenty (20) days from the date of service hereof or a judgment may be entered against you.

/s/ Stanley M. Stein
Stanley M. Stein, Esquire
Attorney for Plaintiff,
JOAN CLAREY, individually and on behalf of all persons similarly situated

Counsel of Record for This Party:

STANLEY M. STEIN, PC
Stanley M. Stein, Esquire
445 Fort Pitt Boulevard
Suite 150
Pittsburgh, PA 15219
Telephone: (412) 904-4573
Facsimile: (412) 904-4726
Email: smstein@smsteinlaw.com

SQUITIERI & FEARON, LLP
Stephen J. Fearon, Jr., Esquire
32 East 57th Street, 12th Floor
New York, New York 10022
Telephone: (212) 421-6492
Facsimile: (212) 421-6553
Email: stephen@sfclasslaw.com

*Attorneys for Plaintiff*

E-FILED

AUG 1 4 2012

CIVIL/FAMILY DIVISION
DEPT. OF COURT RECORDS
ALLEGHENY COUNTY, PA

2012 AUG 22 P 2: 19
RECEIVED
SHERIFF OF
MERCER COUNTY

{S0503088.1}

## IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY PENNSYLVANIA

### CIVIL TRIAL DIVISION

...........................................................................................................................

| | | |
|---|---|---|
| JOAN CLAREY, individually and on behalf of all persons similarly situated, | : | Civil Action No.: |
| | : | |
| | : | **CLASS ACTION** |
| Plaintiff, | : | |
| -against- | : | **JURY TRIAL DEMANDED** |
| | : | |
| FIRST NATIONAL BANK OF PENNSYLVANIA, | : | |
| | : | |
| Defendant. | : | |

...........................................................................................................................

### NOTICE TO DEFEND

YOU HAVE BEEN SUED IN COURT.  IF YOU WISH TO DEFEND AGAINST THE CLAIMS SET FORTH IN THE FOLLOWING PAGES, YOU MUST TAKE ACTION WITHIN TWENTY (20) DAYS AFTER THIS COMPLAINT AND NOTICE ARE SERVED, BY ENTERING A WRITTEN APPEARANCE PERSONALLY OR BY ATTORNEY AND FILING IN WRITING WITH THE COURT YOUR DEFENSES OR OBJECTIONS TO THE CLAIMS SET FORTH AGAINST YOU.  YOU ARE WARNED THAT IF YOU FAIL TO DO SO THE CASE MAY PROCEED WITHOUT YOU AND A JUDGMENT MAY BE ENTERED AGAINST YOU BY THE COURT WITHOUT FURTHER NOTICE FOR ANY MONEY CLAIMED IN THE COMPLAINT OR FOR ANY OTHER CLAIM OR RELIEF REQUESTED BY THE PLAINTIFF.  YOU MAY LOSE MONEY OR PROPERTY OR OTHER RIGHTS IMPORTANT TO YOU.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER. IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

LAWYER REFERRAL SERVICE
THE ALLEGHENY COUNTY BAR ASSOCIATION
KOPPERS BUILDING, 11th FLOOR
436 SEVENTH AVENUE
PITTSBURGH, PA 15219
(412) 261-5555

{S0503088.1}

## IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY PENNSYLVANIA

### CIVIL TRIAL DIVISION

..........................................................................................................................

| | |
|---|---|
| JOAN CLAREY, individually and on behalf of all persons similarly situated, | Civil Action No.: |
| | **CLASS ACTION** |
| Plaintiff, | |
| -against- | **JURY TRIAL DEMANDED** |
| FIRST NATIONAL BANK OF PENNSYLVANIA, | |
| Defendant. | |

..........................................................................................................................

### CLASS ACTION COMPLAINT

Plaintiff Joan Clarey alleges the following against Defendant First National Bank of Pennsylvania ("FNB", "Defendant" or the "Bank") on personal knowledge as to Plaintiff's own conduct and upon information and belief as to the acts of others:

### NATURE OF THE ACTION

1.      This is a civil action seeking monetary damages, restitution, injunctive and declaratory relief from FNB arising from its unfair, deceptive and unconscionable assessment and collection of overdraft fees on customer accounts.

2.      FNB is the fourth largest bank in Pennsylvania and provides retail banking services to thousands of customers through approximately 281 branches, including 223 branches in Pennsylvania. Those services include issuing debit cards, which allow the Bank's customers to transact with third parties using funds paid directly from their checking accounts, and issuing Automatic Teller Machine ("ATM") cards, which allow Bank customers to withdraw money

directly from their accounts at ATMs.  These transactions are generally referred to as "point of sale" or debit transactions.

3.      Debit transactions are processed electronically and banks are notified instantaneously when a customer's card is swiped.   Banks have the option to authorize transactions at the point of sale, or to decline transactions at the time of sale if the accounts lack sufficient funds to execute the transactions -- both of which banks have done and are able to do. If a bank declines to pay a retail or service transaction due to insufficient funds in a customer's checking account, the transaction could still be executed if the consumer presents an alternative form of payment.   Similarly, an ATM transaction could still proceed if a bank provides a warning that an overdraft fee would be assessed, and the customer chooses to proceed nevertheless.

4.      Instead of simply declining debit transactions when customers had insufficient funds in their account, or warning its customers that an overdraft fee would be assessed if they proceeded with the transaction -- both things which banks have done and are able to do -- FNB routinely processed debit card transactions even though there were insufficient funds in the account and then charged its customers an overdraft fee.  FNB charged fees of $37 per overdraft, even when the underlying transaction was for only a few dollars.

5.      To further maximize profits, during the proposed Class Period,[1] FNB improperly charged overdraft fees to customer accounts by manipulating the order in which FNB processed transactions.  FNB improperly reordered electronic debit transactions from the highest to lowest dollar amount and processed debits before credits to deplete the customer's available funds as quickly as possible while maximizing the amount of overdraft fees that the Bank collected.

---

[1]      The proposed Class Period is from the beginning of the applicable statute of limitations through the date of class certification.

{S0503088.1}

6.      FNB touts that "We do the right thing when making decisions. Our fundamental belief is that if we do the right thing for the customer, our business will prosper." See FNB Vision,   Mission,   Core   Values   and   Operating   Principles,   available   at http://www.fnbcorporation.com/VisionMissionCoreValuesOperatingPrinciples.aspx.   But   the Bank has sacrificed those lofty ethical proclamations and its purported dedication to the customer in order to line its own pockets with overdraft fees that it generated for itself by manipulating the way the Bank processed transactions.

7.      As a result of these acts and practices, FNB's customers have been charged excessive overdraft fees.  In many instances, when there are multiple debit card transactions, these overdraft fees cost FNB account holders hundreds of dollars in a matter of days, or even hours, even though each transaction is worth only a few dollars.

8.      The Bank's practice of charging excessive overdraft fees disproportionately affected its low-income customers, who were most likely to maintain low balances and were at greatest risk of overdrawing their accounts.  Moreover, overdraft fees tend to create a domino effect because imposing a fee on an account with a negative balance will make it less likely that the account holder's balance will return to positive territory, resulting in more overdraft-related fees.

9.      On behalf of herself and all others similarly situated, Plaintiff brings this action against FNB based on the Bank's deceptive practice of assessing improper and multiple overdraft charges.  Plaintiff seeks injunctive relief, restitution of all overdraft fees paid to the Bank and disgorgement of the ill-gotten gains derived by the Bank from its misconduct, pre-judgment interest, costs of the action, and attorney fees.

## THE PARTIES

10.     Plaintiff Joan Clarey resides in Pittsburgh, Pennsylvania and maintained a checking account with FNB at all relevant times. Plaintiff was charged multiple overdraft fees for the payment of ATM or one-time debit card transactions from her FNB checking account.

11.     Defendant FNB, a subsidiary of F.N.B. Corporation, has its principal executive offices and place of business located in Pittsburgh, Pennsylvania and has branches located throughout Allegheny County and throughout Pennsylvania. At all relevant times, FNB had approximately $9.8 billion in assets and offered a full spectrum of banking options, ranging from savings and checking accounts to auto, mortgage and personal loans.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction of this action because Defendant operates its business, and the acts complained of herein occurred, in Allegheny County in the Commonwealth of Pennsylvania.

13.     Venue is proper in this Court under Pennsylvania Rules of Civil Procedure 1006 (a)(1), 1006 (c)(1), and 2179. Defendant regularly conducts business in the Commonwealth of Pennsylvania and, specifically, within this County. Moreover, the causes of action alleged in this Complaint arose in this County.

## CLASS ACTION ALLEGATIONS

14.     Plaintiff brings this class action on behalf of herself and all others similarly situated pursuant to Pennsylvania Rules of Civil Procedure 1701, et seq. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority prerequisites of Pennsylvania Rules of Civil Procedure 1701, et seq.

### A.     The Proposed Class

15.     Plaintiff seeks to represent the following Class of similarly situated persons:

> All FNB customers who, within the applicable statute of limitations through the date of class certification, initiated an electronic funds transfer with an ATM or debit card issued by FNB and were assessed one or more overdraft fees or charges for an ATM or one-time debit card transaction as a result of FNB's improper practices as alleged herein (the "Class").

16.    Excluded from the Class are: FNB; FNB's parents, subsidiaries, affiliates, officers and directors; any entity in which FNB has a controlling interest; all FNB customers whose accounts were properly overdrawn at the time they incurred overdraft fees[2]; all FNB customers who incurred overdraft fees that were reversed, returned or fully refunded by the Bank; governmental entities; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

17.    Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

### B.    Numerosity

18.    The members of the Class are so numerous that joinder is impractical.  Upon information and belief, at all relevant times FNB had thousands of customers and the Class includes at least hundreds of members.  The Court may ascertain the exact size of the Class and the identities of the individual members thereof through Defendant's records, which are in exclusive control of Defendant.

19.    This case centers on Defendant's practice of charging overdraft fees for payment of ATM or one-time debit card transactions.  Because of the relatively small amount of the individual charges, Class members who have been improperly assessed these fees are not likely to be able to prosecute individual lawsuits that would cost much more in attorney fees to bring the suit than the actual claim for recovery.

---

[2]    Accounts are "properly overdrawn" if the negative balance is not a result of FNB's improper practices, as alleged herein, of re-sequencing debit card transactions from highest to lowest.

{S0503088.1}

20.     Because of the various locations and large number of members of the Class, joinder of all members would be extremely difficult and inconvenient.  Defendant operates more than 280 branch offices, including more than 220 in Pennsylvania.

21.     In the interest of judicial economy, the Court should determine Defendant's liability for all Class members in a single action rather than having hundreds of cases for the same cause of action based on the same facts pending in multiple courts.

### C.     Typicality

22.     Plaintiff's claims are typical of the claims of all members of the Class in that Plaintiff and each Class member was a FNB customer and was assessed fees or charges for Defendant's overdraft services stemming from purchases made with ATM or debit cards.

23.     Plaintiff's claims and the claims of each Class member are based on the same legal theories and arise from the same unlawful conduct.

24.     Plaintiff has suffered the same injury as all Class members.  Plaintiff has the same interest as every other Class member and has no interests antagonistic to the interests of any other Class member.

### D.     Common Questions of Law and Fact

25.     This case presents many questions of law and fact common to Plaintiff and the Class which predominate over any questions which may affect individual members, including:

    a.     Whether FNB manipulated or re-sequenced debit card or ATM transactions from highest to lowest or processed debits before credits to maximize the number of overdrafts incurred by customers and the amount of overdraft fees assessed;

    b.     Whether FNB imposed overdrafts and overdraft fees when, but for FNB's manipulating and reordering transactions, the overdrawn accounts would otherwise have sufficient funds;

c.   Whether FNB failed to alert customers that a debit card or ATM transaction would trigger an overdraft fee or multiple overdraft fees, and failed to provide customers with an opportunity to cancel such transactions;

d.   Whether FNB failed to obtain affirmative consent from customers before processing transactions that would cause those customers' accounts to be overdrawn and result in assessing overdraft fees;

e.   Whether FNB failed to provide customers with accurate balance information;

f.   Whether FNB charged excessive overdraft fees that outweighed the actual costs and risks of covering insufficient funds transactions;

g.   Whether FNB requires its customers to enter into standardized account agreements which include unconscionable provisions;

h.   Whether FNB's overdraft practices and policies outlined herein violate the laws of Pennsylvania; and

i.   Whether Plaintiff and members of the Class are entitled to injunctive relief, actual damages, statutory damages, costs, and attorney's fees for Defendant's acts and conduct and, if so, the proper measure of such damages.

26.   Resolution of any of the above questions of law or fact common to the Class will affect all of the Class members.

**E.   Adequacy of Representation**

27.   Plaintiff is a member of the Class as defined above.

28.   Through her attorneys, Plaintiff can and will fairly, adequately and vigorously prosecute the claims of the Class and represent and protect the interests of the members of the Class.

29.   Plaintiff (i) maintained an account with FNB; (ii) initiated multiple electronic funds transfers with an ATM or debit card issued by Defendant; and (iii) was actually assessed one or more overdraft fees or charges for an ATM or one-time debit card transaction as a result

of FNB's practice of holding debit card transactions, re-sequencing the transactions from highest to lowest, and processing debits before credits.

30.     Plaintiff has suffered the same injury as the Class members, that injury being the unlawful imposition of fees or charges by Defendant for its overdraft service.

31.     Plaintiff has the same interests as the Class members, including recovery of unlawfully collected fees or charges imposed by FNB. Plaintiff has no interests antagonistic to or in conflict with the members of the Class that she seeks to represent.

32.     Plaintiff has retained competent counsel and will fairly, adequately and vigorously prosecute the claims of the Class and represent and protect the interests of the members of the Class. Plaintiff's counsel is able, competent and qualified to prosecute this class action litigation on behalf of Plaintiff and the Class.

### F.     Predominance and Superiority

33.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of FNB, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the Class members will continue to suffer losses and the Bank's misconduct will proceed without remedy.

34.     Even if Class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard

which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

35.     Common questions of law or fact predominate over individual issues. Predominant issues in this case include whether Defendant re-sequenced transactions to cause Plaintiff and members of the Class to incur overdraft charges.

36.     Proceeding as a class action in this case is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and the Class.   Relative to the aggregate damages that may be awarded to the Class, the members of the Class suffered individually small damages.   Therefore, the expense and burden of individual litigation makes it economically infeasible and procedurally impracticable for each member of the Class to individually seek redress for Defendant's wrongdoings.

37.     Furthermore, individualized litigation would present the potential for varying, inconsistent, or contradictory judgments, and would likely cause delay and additional expense to all parties and the court system resulting from multiple trials of the same factual issues. Proceeding as a class action presents fewer management difficulties, conserves the resources of the parties and the court system and would protect the rights of each member of the Class.

38.     Plaintiff is aware of no difficulty to be encountered in managing of this action that would preclude its maintenance as a class action.

## STATEMENT OF FACTS

A.     **FNB**

39.     FNB provides retail banking services to hundreds or thousands of customers, including through more than 220 branches in Pennsylvania.  These services include issuing debit

cards for use by the Bank's customers, including Plaintiff and members of the putative Class, in connection with their checking accounts.

40.    FNB's debit cards allow customers to withdraw money from their accounts at ATMs or to engage in point of sale transactions using funds directly from their accounts.

41.    During the proposed Class Period, FNB derived substantial revenue from the overdraft fees it charged its customers in connection with debit card transactions.

42.    As discussed below, FNB maximized its income from overdraft fees by manipulating the timing and order in which customer debit card charges were processed, charging overdraft fees on accounts that were not actually overdrawn.  These practices violated Pennsylvania law and caused Plaintiff and the Class members to pay millions of dollars in improperly assessed overdraft fees during the Class Period.

**B.    FNB's Relevant Customer Documents**

43.    On information and belief, the terms of FNB's checking accounts were contained in a standardized account holder agreement (the "Account Agreement"), which was presented to its customers on a "take it or leave it" basis.  The Account Agreement was drafted and imposed by FNB, which was the party of vastly superior bargaining strength, and thus constitutes an agreement of adhesion.

44.    The Account Agreement failed to disclose the Bank's policy to always reorder debits from highest dollar value to lowest.  Moreover, the Account Agreement failed to disclose that FNB would process debits to a customer's account before processing credits in order to maximize overdrafts, and that the Bank delayed posting certain transactions, or processed them ahead of, or behind, transactions from different days, in order to post multiple debits on a single day and maximize overdrafts on that day.  Thus, the Account Agreement failed to disclose that

FNB's reordering practices would allow the Bank to maximize the number of overdrafts on any account, and to assess overdraft fees for days when a customer's account was not actually overdrawn.

45.     Upon information and belief, FNB failed to disclose that it would charge overdraft fees when customer accounts had a positive balance and were not overdrawn. The Account Agreement failed to disclose the Bank's wrongful practices relating to its reordering of debit transactions and imposing overdraft fees from debit card purchases and ATM withdrawals. As described herein, FNB did not debit customer accounts immediately at the time of purchase in the amount of that purchase only, and FNB reordered transactions from different days for its own benefit, to the consumer's detriment.

46.     FNB's representations were deceptive and unfair because it was, in fact, the Bank's policy and practice during the Class Period to *always* reorder debits from highest dollar value to lowest, and because the Bank grouped together point of sale transactions that occurred on subsequent days with those transactions that occurred on earlier days, and reordered them so that debits were processed before credits and higher debits that occurred on subsequent days were posted to its customers' accounts before lower debits that occurred on earlier days.

47.     In this way, FNB maximized overdraft fee revenue by charging fees on customer accounts that were not overdrawn.

48.     Even if Plaintiff was given materials containing clear and unambiguous language disclosing or authorizing the Bank's practices as described above, any such notice or authorization would have been inadequate and ineffective. Furthermore, any reservation of discretion to reorder transactions and assess overdraft fees would be constrained by FNB's obligation to deal fairly and in good faith.

{S0503088.1}

**C.    FNB's Re-Ordering of Checking Account Transactions**

49.    When the Bank's customers used their debit cards to make withdrawals from ATMs or make purchases from retailers, these debit transactions were processed electronically by FNB. Thus, the Bank's computer system was notified instantaneously when the customer's card was swiped by a retailer or at an ATM. At the time it received such notification, the Bank could determine whether there were sufficient funds in the customer's account to cover the requested transaction, and had the ability to decline the transaction if it would overdraw the customer's account.

50.    Despite this capability, FNB did not decline debit transactions at the point of sale or at ATMs that would overdraw a customer's account and result in overdraft fees being charged to the customer. Nor did FNB notify the customer if her account had insufficient funds to cover a transaction before accepting or declining the charge. Instead, it regularly allowed such transactions to be completed for the express purpose of causing the account to become overdrawn so that the Bank could charge an overdraft fee.

51.    In addition, FNB did not post debit transaction charges to a customer's account in the order in which they were received by the Bank. Rather, the Bank employed sophisticated software to manipulate and reorganize debit transactions from largest debit to smallest debit rather than in chronological order. This caused the customer's account to be overdrawn more rapidly because larger transactions would deplete the account balance and multiple smaller transactions could be charged to an already overdrawn account.

52.    In addition, FNB refrained from immediately posting charges to a customer's account as it received them – sometimes it did not post charges to the account for multiple business days. By holding charges rather than posting them immediately to an account, FNB

was able to amass a number of charges on the account which it then would post to the account on a single date, in the order of largest dollar amount to smallest, and further increased the number of overdraft fees that it could impose that it would otherwise not be able to impose.

53.    These practices caused Plaintiff and the Class to be charged millions of dollars in overdraft fees for transactions that occurred at times when their accounts were not overdrawn because they had sufficient funds in their accounts to cover the transactions. Indeed, overdraft charges were likely to occur at times when, but for the manipulation and alteration, there would be funds in the account and no overdraft would occur.

54.    FNB did not inform its customers that it always reordered transactions from highest dollar value to lowest, regardless of when the charges were made, and always processed debits before credits, nor that it delayed posting some transactions in order to post multiple debits on a single day and maximize overdrafts on that day. This conduct was deceptive and contrary to the reasonable expectations of its customers.

55.    The delayed posting also prevented customers from ascertaining the accurate balances in their accounts. As such, the periodic account statements that FNB provided to its customers on its website and in written form were deceptive, unfair and misleading because they falsely represented the actual funds that were available in the accounts.

56.    The Bank's policy and practice of processing debits before credits and posting charges from largest dollar amount to smallest, rather than chronologically, or from smallest to largest, is specifically designed to trigger overdraft fees for account charges that would not otherwise result in such fees and thereby maximize overdraft fees for FNB.

57.    The Bank's processing practices substantially increased the likelihood that customers' smaller charges would result in multiple overdraft fees. The practices provided FNB

with substantially higher overdraft fees than it otherwise would have received without these practices.

58.     For example, if a Bank customer had an initial starting balance of $100 and made four transactions in the following order: $10, $10, $10 and $95. If processed in the order in which they were made, his $95 charge would have been made against a $70 balance and he should have incurred a single overdraft fee. When FNB posted the customer's transactions, however, the Bank reordered them from highest to lowest: $95, $10, $10, and $10. Therefore, when the customer received his statement, he would see the $95 transaction first, and each $10 transaction appeared to have been made against insufficient funds, incurring three overdraft fees.[3]

59.     In addition, the Bank's customer account statements are deceptive, unfair and misleading because FNB charged overdraft fees even when no transactions were made against a negative balance. In other words, FNB assessed overdraft fees independent of any account activity.

60.     These practices caused Plaintiff and the Class to be charged millions of dollars in overdraft fees for transactions that occurred at times when their accounts were not overdrawn because they had sufficient funds in their accounts to cover many of the transactions. Indeed, overdraft charges were likely to occur at times when, but for the manipulation and alteration, there would be funds in the account and no overdraft would occur.

**D.     FNB's Obstruction of Accurate Balance Information**

61.     The Bank's overdraft practices and policies made it virtually impossible for its customers to avoid overdraft fees, no matter how carefully they monitored their accounts because

---

[3]     *See* FDIC Study of Bank Overdraft Programs, November 2008, at 11 n.12, available at: http://www.fdic.gov/bank/analytical/overdraft/FDIC138_Report_Final_v508.pdf.

the Bank would hold and re-sequence its customers' debit card transactions to maximize the number of overdrafts and corresponding fees on the account.

62.    FNB failed to provide customers with accurate balance information because the information on customers' account activity reflected on the Bank's website on any given day did not reflect that debit transactions from other days had been withheld from posting and would be processed in order from highest to lowest on that day.

63.    The Bank's online account statements regularly disclosed that customers had a positive balance when, in reality, they had a negative balance because of outstanding debits that had been withheld from processing or had not been processed in the order in which they were received by the Bank or because of multiple overdraft charges imposed by the Bank.

64.    Despite the Bank's actual knowledge of a customer's outstanding debits and transactions not reflected in the customer's online statement, the Bank routinely failed to inform that customer if a transaction would result in an overdraft of the customer's account.

65.    Even when FNB had actual knowledge of outstanding transactions which had already created a negative balance in a customer's account, it caused the customer to incur more overdraft charges by approving – rather than prudently declining – subsequent debit card purchases and ATM transactions.

**E.    FNB's Failure to Notify Customers of Overdrafts or Block Transactions That Will Result in an Overdraft**

66.    As discussed above, the Bank received an electronic notification each time a customer engaged in a debit transaction and could determine nearly instantaneously whether there were sufficient funds in the customer's account to cover that transaction.  The Bank had the technological capability to decline transactions.  FNB could also notify customers that an

attempted debit card transaction would result in an overdraft, and give customers the option to decline the transaction to avoid incurring the overdraft fee.

67.     Notwithstanding its technological abilities and actual knowledge, FNB failed to provide notice to Plaintiff and the Class that a particular debit card transaction would result in an overdraft and, hence, an overdraft fee.  FNB also failed to notify its customers of their ability to opt-out of the Bank's overdraft services, although this option was available to the Bank's customers at all times during the Class Period.  As a direct result of the Bank's improper omissions and unfair practices, Plaintiff and the Class members incurred overdraft fees without their knowledge and without their consent.

**F.     FNB's Unfair and Egregious Provisions and Policies**

68.     FNB's overdraft policies and practices during the Class Period were unfair and egregious in the following respects, among others:

    a.     FNB did not alert or provide notice to its customers at the time of a transaction that it would trigger an overdraft or multiple overdrafts, and failed to provide the customers the opportunity to cancel that transaction, before assessing an overdraft fee;

    b.     The Account Agreement and related documents were contracts of adhesion in that they were standardized forms imposed and drafted by FNB, a party of vastly superior bargaining strength, leaving the customer with no choice but to adhere to these terms if he wanted to open a checking account with the Bank;

    c.     The Account Agreement provided to customers was ineffective, ambiguous, deceptive, unfair, and misleading in that it did not unambiguously state that the Bank always would reorder debits from highest dollar value to lowest, even though FNB *always* reordered transactions in this way in order to maximize overdrafts and overdraft fee revenues for the Bank;

d.   The Account Agreement provided to customers was ineffective, ambiguous, deceptive, unfair, and misleading in that it did not disclose that the Bank would delay posting certain transactions, or would process them ahead of, or behind, transactions from different days, in order to post multiple debits on a single day or create multiple overdrafts, even though FNB manipulated transactions in this way to maximize overdrafts and overdraft fee revenues for the Bank; and

e.   The Account Agreement provided to customers was ineffective, ambiguous, deceptive, unfair, and misleading in that it did not unambiguously state that the Bank always would process debits to a customer's account before processing credits, even though FNB *always* grouped and processed transactions in this order to maximize overdrafts and overdraft fee revenues for the Bank.

## G.   FNB's Data Manipulation and Overdraft Practices Harmed Plaintiff and the Class

69.   FNB's wrongful overdraft policies and practices described above harmed Plaintiff and members of the Class.

70.   Plaintiff used her ATM and debit card issued by Defendant on several occasions in order to conduct electronic point-of-sale transactions. FNB wrongfully charged Plaintiff overdraft fees on multiple occasions and charged Plaintiff multiple overdraft fees on one day. Plaintiff's experience is typical and illustrative of how the Bank's re-sequencing policies work.

71.   For example, if Plaintiff's account had a $50 balance when FNB processed several transactions, and Plaintiff made four transactions of $10 and one subsequent transaction of $100 on the same day, the Bank would reorder the debits from largest to smallest, imposing four overdraft fees on the customer. Conversely, if the $100 transaction were debited last – consistent with the actual order of transactions – only one overdraft fee should be assessed.[4]

---

[4] *See* FDIC Study of Bank Overdraft Programs, November 2008, at 11 n.12, available at: http://www.fdic.gov/bank/analytical/overdraft/FDIC138_Report_Final_v508.pdf.

72.     The preceding example illustrates the harm and damage sustained by Plaintiff and members of the Class as a result of FNB's wrongful overdraft policies and practices.

73.     FNB failed to notify Plaintiff that she could be assessed overdraft fees on transactions even though there were sufficient funds in the checking account to cover the transaction at the time the transaction was executed.  FNB never notified Plaintiff at the time she executed the purported insufficient funds transactions that her checking account was overdrawn or that she would be charged an overdraft fee as a result of the transactions.

74.     The overdraft charges assessed to Plaintiff are representative of millions of dollars of overdraft fees that FNB wrongfully assessed and deducted from its customers' accounts. These wrongful takings are especially egregious considering the fact that the Bank approved each transaction and knew at the time of approval whether there were sufficient funds in the account to cover the transaction.

**H.     The Damages Sustained by Plaintiff and the Class**

75.     FNB's overdraft policies made it difficult for a customer to avoid injury even if the customer kept close track of the balance in his account.  The injury resulting from such policies is not reasonably avoidable by customers because they often lack sufficient information about key aspects of their account such as when funds from a deposit or a credit for a returned purchase will be made available.

76.     But for the Bank's overdraft services and policies, a transaction that would potentially overdraw a customer's account would typically be denied and the customer would be given the opportunity to provide other forms of payment without incurring any fee.

77.     Moreover, the Bank's policy of manipulating customer account balances to process debits before credits and process transactions from highest to lowest amount created

artificial overdrafts or exploited minimally overdrawn accounts to maximize the number of overdrafts and related fees the Bank could charge its customers.

78.     Plaintiff and members of the Class either had adequate funds to cover the transactions posted to their accounts, or the accounts were allowed to become overdrawn, even by *de minimis* margins, exclusively so that FNB could impose these wrongful charges. In many instances, FNB's manipulation of the process for imposing overdraft fees triggered a cascade of charges that exponentially added to the charges it collected from Plaintiff and Class members.

79.     Thus, as a consequence of FNB's overdraft policies and practices, FNB improperly deprived Plaintiff and the Class of significant funds to which FNB had no legitimate claim, causing ascertainable monetary losses and damages

## EQUITABLE TOLLING

80.     FNB affirmatively and wrongfully concealed its unfair, fraudulent and deceptive acts and practices from Plaintiff and the Class members by, *inter alia*, failing to inform consumers about its policy and practice of *always* re-sequencing debit card purchases from largest dollar value to smallest and processing debits before credits, and by grouping transactions into separate categories on customer account statements so that its re-sequencing practices is not easily discernible.

81.     Plaintiff and the other Class members did not know and could not reasonably have known of FNB's unfair, fraudulent, and deceptive acts and practices, nor could they reasonably have discovered these acts and practices.

82.     There is a substantial nexus between the wrongful conduct that has occurred within the statute of limitations and the misconduct prior to that time.   The same

misrepresentations and material omissions regarding FNB's overdraft charge practices were at issue.

83.     The statute of limitations applicable to any claim brought by Plaintiff and other Class members as a result of the conduct alleged herein has been tolled as a result of FNB's concealment.

## FIRST CLAIM FOR RELIEF

### Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing

84.     Plaintiff repeats the allegations above as if stated fully herein.

85.     Plaintiff and FNB have contracted for bank account deposit, checking, ATM, and debit card services, as embodied in FNB's Account Agreement and related documentation.

86.     FNB's Account Agreement provides in relevant part:

> TRANSACTIONS AVAILABLE Your Card and PIN can give you access to your checking, savings, money market and line of credit accounts. You may select in advance the account(s) you wish to have access to through your Card(s) and PIN. We must approve the account(s) that you choose.
>
> *   *   *   *   *
>
> A. ATM transactions. Transactions at ATM terminals require the use of your card and PIN. You may use your card at our bank's ATM terminals or at any ATM located throughout the United States and in certain foreign countries which bears the Star logo or the logo of any network identified on your card. The amount of transfers and withdrawals is limited to a total of $500 per day, provided you have sufficient funds in your accounts. You may make the following types of ATM transactions.
>
> >Withdraw cash from your checking, regular savings and money market account(s) and obtain a cash advance on your line of credit account();
>
> >transfer funds between your checking, regular savings and money market account(s) and from your line of credit account(s) to your checking account(s).
>
> B. Point of sale transactions using your card and PIN-Star: You may use your Star ATM card and/or Visa Debit Card along with your PIN at any retail establishment (Merchant) who maintains a Star POS terminal or a shared

network terminal displaying the Star logo to complete the following types of transactions, up to $2500 per day:

>Purchase goods and/or services . . . .

\* \* \* \* \*

OVERDRAFTS: If you use your card at an ATM for POS terminal to overdraw your account: a) we will first attempt to access any other deposit account you have designated for transfers to cover over drafts; b) secondly we will attempt to access your line of credit account with our bank which you designated for use as overdraft protection; c) if funds are not available from these sources, we may elect to pay the overdraft under our overdraft honor program provided you have opted into this service. You agree to pay our standard overdraft and service fees and shall deposit sufficient funds into your deposit account to cover the overdraft. We may charge the amount of the overdraft and overdraft fee to any account(s) you have with us, subject to applicable law if you have arranged for overdraft protection through a line of credit with our Bank, you agree not to exceed the maximum amount available to you. If we have to take steps to collect anything you owe us as a result of an overdraft, you will pay any reasonable collection costs, such as attorney fees and any costs in connection with an appeal when applicable, subject to any legal limitation.

\* \* \* \* \*

BANK'S LIABILITY FOR FAILURE TO MAKE A TRANSFER

Our liability for failure to make transfers. If we do not complete a preauthorized transfer on time or in the correct amount according to our agreement with you, we will be liable for your actual, proven losses or damages:

- if, through no fault of ours, you do not have enough money in your account to make the transfer.

87.    Plaintiff believes and therefore avers that the same or similar language is contained in all Account Agreements FNB has entered into with its depositors.

88.    The conduct of FNB in re-ordering transactions in order to maximize the overdraft charges paid by its account holders breaches the Account Agreement in some or all of the following regards:

{S0503088.1}

A. In that account holders are prevented from using the accounts which they have selected in advance to which to have access through their Card(s) and PINs and are required to access accounts which they did not select in order to pay overdraft fees and/or credit charges;

B. In that the account holders are prevented and prohibited from entering into ATM transactions to the full amount authorized by the agreement and/or the full amount available from their accounts at the time of a permitted transaction;

C. In that the account holders are prevented and prohibited from entering into POS retail transactions to the full amount authorized by the agreement and/or the full amount available from their accounts at the time of a permitted transaction;

D. In that account holders are charged overdraft fees despite the fact that they did not use their cards at an ATM for POS terminal to overdraw their accounts as the only reason that their accounts were overdrawn was because FNB re-ordered the transactions to drain the account holders' accounts;

E. In that account holders who did not have sufficient funds in their accounts due to FNB's unconscionably deliberate practice of re-ordering account holders' transactions did not have such funds available due to their own fault but due to the fault of FNB as a result of its dishonest purpose to increase the overdraft fees to be paid by the account holders.

89. Under the laws of Pennsylvania, moreover, good faith is an element of every contract pertaining to the assessment of overdraft fees. Whether by common law or statute, all

such contracts impose upon each party a duty of good faith and fair dealing.  Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain.  Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.  Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

90.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified.  Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.  Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

91.     At all relevant times, FNB has breached the contract as well as the covenant of good faith and fair dealing in the Account Agreement through its overdraft policies and practices as alleged herein.

92.     Plaintiff and the Class have performed all, or substantially all, of the obligations imposed on them under the Account Agreement.

93.     Plaintiff and members of the Class have sustained damages as a result of FNB's breach of the covenant of good faith and fair dealing.

## SECOND CLAIM FOR RELIEF

### Unconscionability

94.     Plaintiff repeats the allegations above as if stated fully herein.

95.     Plaintiff alleges this Claim in the alternative.

96.     FNB's overdraft policies and practices are substantively and procedurally unconscionable in the following respects, among others:

    a.    The Bank did not alert its customers that a debit card transaction would trigger an overdraft, and did not provide the customer the opportunity to cancel that transaction, before assessing an overdraft fee or, often, multiple overdraft fees;

    b.    The Account Agreement and related documents were contracts of adhesion in that they were standardized forms, imposed and drafted by the Bank, which was a party of vastly superior bargaining strength, that provided the customer only with the "opportunity" to adhere to the one-sided terms or reject the agreement in its entirety;

    c.    The amount of overdraft fees was disclosed in an ineffective, ambiguous, misleading, and unfair manner;

    d.    The Account Agreement provided to customers were ineffective, ambiguous, deceptive, unfair, and misleading in that they did not unambiguously state that the Bank always would reorder debits from highest dollar value to lowest, even though FNB *always* reordered transactions in this way for customers in order to maximize overdrafts and overdraft fee revenues for the Bank during the Class Period;

    e.    The Account Agreement provided to customers were ineffective, ambiguous, deceptive, unfair, and misleading in that they did not disclose that the Bank would delay posting certain transactions, or would process them ahead of, or behind, transactions from different days, in order to post multiple debits on a single day, even though FNB manipulated transactions in this way to maximize overdrafts and overdraft fee revenues for the Bank; and

    f.    The Account Agreement provided to customers was ineffective, ambiguous, deceptive, unfair, and misleading in that it did not unambiguously state that the Bank always would process debits to a customer's account before processing credits, even though FNB *always* grouped and processed transactions in this order for customers in order to maximize overdrafts and overdraft fee revenues for the Bank.

97.     Considering the great business acumen and experience of FNB in relation to Plaintiff and the Class, the great disparity in the parties' relative bargaining power, the inconspicuousness and incomprehensibility of the contract language at issue, the oppressiveness of the terms, the commercial unreasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns, these provisions are unconscionable and, therefore, unenforceable as a matter of law.

98.     The imposition of overdraft charges which exceed the amount overdrawn (*e.g.*, imposing a $37 charge on an overdraft of less than $37) is itself unconscionable. Similarly, imposing multiple $37 overdraft fees is unconscionable. Such charges are not reasonably related to the Bank's cost of covering the overdraft or its risk of nonpayment (where the Bank pays the overdraft) or to the Bank's cost of returning the item unpaid (where the Bank does not pay the overdraft).

99.     Plaintiff and members of the Class have sustained damages as a result of FNB's unconscionable policies and practices as alleged herein.

## THIRD CLAIM FOR RELIEF

### Conversion

100.    Plaintiff repeats the allegations above as if stated fully herein.

101.    Plaintiff alleges this Claim in the alternative.

102.    FNB had and continues to have a duty to maintain and preserve its customers' checking accounts and to prevent their diminishment through its own wrongful acts.

103.    FNB has wrongfully collected overdraft fees from Plaintiff and the members of the Class, and has taken specific and readily identifiable funds from their accounts in payment of these fees in order to satisfy them.

{S0503088.1}

104.   FNB has, without proper authorization, assumed and exercised the right of ownership over these funds, in hostility to the rights of Plaintiff and the members of the Class, without legal justification.

105.   FNB continues to retain these funds unlawfully without the consent of Plaintiff or members of the Class.

106.   FNB intends to permanently deprive Plaintiff and the members of the Class of these funds.

107.   These funds are properly owned by Plaintiff and the members of the Class, not FNB, which now claims that it is entitled to their ownership, contrary to the rights of Plaintiff and the members of the Class.

108.   Plaintiff and the members of the Class are entitled to the immediate possession of these funds.

109.   FNB has wrongfully converted these specific and readily identifiable funds.

110.   FNB's wrongful conduct is continuing.

111.   As a direct and proximate result of this wrongful conversion, Plaintiff and the members of the Class have suffered and continue to suffer damages.

112.   By reason of the foregoing, Plaintiff and the members of the Class are entitled to recover from FNB all damages and costs permitted by law, including all amounts that FNB has wrongfully converted.

## FOURTH CLAIM FOR RELIEF

### Unjust Enrichment

113.   Plaintiff repeats the allegations above as if stated fully herein.

114.   Plaintiff alleges this Claim in the alternative.

{S0503088.1}

115.    Plaintiff, on behalf of herself and the Class, asserts a common law claim for unjust enrichment.

116.    By means of FNB's wrongful conduct alleged herein, FNB knowingly provides banking services to Plaintiff and members of the Class that are unfair, unconscionable, and oppressive.

117.    FNB knowingly received and retained wrongful benefits and funds from Plaintiff and members of the Class.  In so doing, FNB acted with conscious disregard for the rights of Plaintiff and members of the Class.

118.    As a result of FNB's wrongful conduct as alleged herein, FNB has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and members of the Class.

119.    FNB's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

120.    Under the common law doctrine of unjust enrichment, it is inequitable for FNB to be permitted to retain the benefits it received, and is still receiving, without justification, from the imposition of overdraft fees on Plaintiff and members of the Class in an unfair, unconscionable, and oppressive manner.   FNB's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

121.    The financial benefits derived by FNB rightfully belong to Plaintiff and members of the Class. FNB should be compelled to disgorge in a common fund for the benefit of Plaintiff and members of the Class all wrongful or inequitable proceeds received by them.  A constructive trust should be imposed upon all wrongful or inequitable sums received by FNB traceable to Plaintiff and the members of the Class.

122.    Plaintiff and members of the Class have no adequate remedy at law.

## FIFTH CLAIM FOR RELIEF

### VIOLATIONS OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW, 73 P.S. §§ 201

123.    Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

124.    Plaintiff pleads this Claim in the alternative.

125.    Plaintiff brings this claim on her own behalf and on behalf of all other members of the Class described above.

126.    This is a claim for violating the Pennsylvania Unfair Trade Practices And Consumer Protection Law ("UTPCPL"), 73 P.S. § 201.

127.    At all relevant times, Defendant conducted trade and commerce within the meaning of the UTPCPL.

128.    Plaintiff and the Class are "persons" as defined and construed under the UTPCPL.

129.    Defendant's conduct as set forth herein constitutes and unconscionable commercial practice comprised of deceptive acts or practices in violation of the UTPCPL, 73 P.S. § 201-2(xxi) and established public policy.

130.    The harm caused by Defendant's conduct to consumers in Pennsylvania greatly outweighs any benefits associated with those practices.

131.    Plaintiff and the Class suffered actual and ascertainable losses of money or property as a result of Defendant's unconscionable, deceptive and/or unfair trade practices, including payment of improper overdraft fees

## JURY DEMAND

132.    Plaintiff hereby demands a trial by jury on all matters so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of herself and the Class, respectfully requests that this Court grant the following relief:

A.      An Order certifying this action as a class action and certifying the Class pursuant to Rule 1701, et seq., appointing Plaintiff as the representative of the Class, and appointing counsel for Plaintiff as Class Counsel;

B.      An Order declaring FNB's overdraft policies and practices to be wrongful, unfair, unconscionable, and in violation of the Plaintiff's rights;

C.      An Order enjoining FNB's further violations of law;

D.      Disgorgement of the ill-gotten gains derived by FNB from its misconduct;

E.      Pre-judgment interest at the maximum rate permitted by applicable law;

F.      An award to Plaintiff and the members of the Class of actual damages;

G.      Payment of costs of suit and reasonable attorneys' fees incurred herein; and

H.      For other and further relief as the Court may deem proper.


Dated: August 14, 2012              STANLEY M. STEIN, PC

                                    By: /s/ Stanley M. Stein
                                        Stanley M. Stein
                                        445 Fort Pitt Boulevard
                                        Suite 150
                                        Pittsburgh, PA 15219
                                        Telephone: (412) 904-4573
                                        Facsimile:  (412) 904-4726
                                        Email: smstein@smsteinlaw.com


{S0503088.1}

SQUITIERI & FEARON, LLP
Stephen J. Fearon, Jr.
32 East 57th Street, 12th Floor
New York, New York 10022
Telephone: (212) 421-6492
Facsimile:  (212) 421-6553
Email: stephen@sfclasslaw.com

*Attorneys for Plaintiff*

I, Joan Clarey, hereby state that I am the Plaintiff in this action and verify that the

statements made in the foregoing Complaint are true and correct to the best of my knowledge,

information, and belief.  I also understand that the statements are made subject to the penalties of

18 Pa. C.S.A. § 4904, relating to unsworn falsification to authorities.


Dated: July  23 , 2012                          _____
                                                Joan Clarey, Plaintiff


31